

1  Julius Johnson SBN:96407
   **The Law Offices of Julius Johnson & Associates, Inc.**
2  2476 N. Lake Ave
   Altadena, CA 91001
3  info@juliusjlaw.com

4  ATTORNEY For Plaintiffs, Paula Boyd *and Darryl Boyd*

5

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  In re:                          )   **Chapter 7**
                                    )
12  CHIN KUN AN,                    )   **Case No.: 2:11-bk-46346 BB**
                                    )
13         Debtor.                  )   **Adv. Case No.: _____**
                                    )
14  _____)
                                    )   ~~FIRST AMENDED~~
15  DARRYL BOYD and PAULA BOYD,     )   **COMPLAINT FOR DAMAGES AND**
                                    )   **TO DETERMINE NON-**
16         Plaintiffs,              )   **DISCHARGEABILITY OF DEBT**
                                    )
17      vs.                         )
                                    )
18  CHIN KUN AN, an individual; JS  )
    DAUGHTERS CORPORATION, a California )
19  corporation; SOMPORN            )
    RUNGVIVATJARUS, an individual;  )
20  JIRAVAT RUNGVIVATJARUS, and     )
    individual; AMERITY, INC., a California )
21  corporation, dba AMERICA REALY &)
    INVESTMENT; BENAJAMIN MOON      )
22  KANG HUH, an individual; CHUNGMAN )
    HO, an individual dba AMERICA REALTY & )
23  INVESTMENT; JAMES KWAK, an      )
    Individual; DOOK SOO YUM, an individual; )
24  DOUBLE Y INVESTMENTS, a California )
    limited liability company and Roes 1 through )
25  30, inclusive,                  )
                                    )
26         Defendants.              )
    _____)
27

28

---

**ADVERSARY COMPLAINT**

## COMPLAINT

Darryl Boyd and Paula Boyd (the "Creditors"), as Plaintiffs herein, complains as follows:

## NATURE OF THE ACTION

1.      This is an adversary proceeding by the Creditors against Chin Kun An (the "Defendant"), to avoid discharge of a fraud committed against the Plaintiffs in relation to fraudulent oral and written representations intended to induce Plaintiffs reliance to Purchase a Business known as the Alondra Coin Laundry ("the Business"). The Plaintiffs contend the actual misrepresentations were made by the sales agents, which included the debtor in bankruptcy, Debtor/Defendants, amongst others, benefitted from their improper acts or omission in receiving a commission from the purchase and sale of the Business.

## JURISIDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to provision of 28 U.S.C. §§ 151, 157 and 1334.

3.      Venue over this proceeding is proper in this Court pursuant to 28 U.S. C. §§1408 and 1409.

4.      This adversary proceeding is a core proceeding. 28 U.S. C. §157(b)(2)(1) and (0).

5.      This adversary proceeding relates to *In re Chin Kun An,* a Chapter 7 bankruptcy case now pending before the United State Bankruptcy Court for the Central District of California, Los Angeles Division, docketed as Case No.: 2:11-bk-46346 BB).

## THE PARTIES AND RELATED ENTITIES

6.      Plaintiffs Darryl Boyd and Paula Boyd (collectively referred to as "Plaintiffs" or "Boyd") were and are individuals residing in the County of Los Angeles, State of California. Plaintiffs are creditors of the Debtor.

7.      Defendant An is the Debtor in the underlying Chapter 7 case. Debtor filed a voluntary Chapter 7 petition and schedules on august 25, 2011. At all times mentioned, Defendant Chick Kun An was and is an individual who, on information and belief, resides in Los Angeles County, State of California. Plaintiffs is informed and believes and thereon alleges that, at all times material herein, Defendant An was employed as a real estate agent for a real estate brokerage firm, Amerity, Inc ("Amerity").

8.      At all timed herein mentioned, Defendants JS Daughters Corporation ("JS Daughters") was and is a California corporation licensed to do business and doing business in the County of Los Angeles, State of California, with its principal place of business in Los Angeles, California.

9.      At all times herein mentioned, Defendants Somporn Rungvivatjarus ("Somporn") was an individual residing in Los Angeles County, State of California, was and is the owner of JS Daughters and was and is its officer, agent and/or principal.

10.      At all times herein mentioned, Defendants Jiravat Rungvivatjarus ("Jiravat") was an individual residing in Los Angeles County, State of California, was and is the owner of JS Daughters and was and is its officer, agent and/or principal.

11.      Plaintiffs are informed and believe and thereon allege that, at all times material herein, JS Daughters was completely dominated and controlled by Somporn and Jiravat, and each of them, such that JS Daughters had no independent identity or existence of its own and its

acts of Somporn and Jiravat, and each of them, such that adherence to the purported separate identities of each or any of them would result in a fraud and injustice to Plaintiffs.

12.     At all times herein mentioned, Defendant Amerity, Inc. dba America Realty & Investment ("Amerity"), was and is a corporation existing under the laws of the State of California, doing business under the fictitious business name of America Realty and Investment ("America Realty") in the County of Los Angeles, State of California, with its principal place of business in Los Angeles, California.

13.     At all times herein mentioned, Defendants Benjamin Moon Kang Huh ("Huh") was and is an individual who, on information and belief, resides in Los Angeles County, State of California, was and is the owner of Amerity, was and is the president of Amerity, and was and is Amerity's owner/agent and/or principal.

14.     Plaintiffs are informed and believe and thereon allege that, at all times material herein, Amerity was completely dominated and controlled by Huh such that Amerity had no independent identity or existence of its own and its acts of Huh, and each of them, such that adherence to the purported separate identities of each or any of them would result in a fraud and injustice to Plaintiffs.

15.     At all times herein mentioned, Defendants Chungman Ho ("Ho") was and is an individual who, on information and belief, resides in Los Angeles County, State of California, was and is doing business as America Realty, and was and is an officer, agent and/or principal of America Realty, which is and was a dba for Amerity.

16.     At all times herein mentioned, Defendants James Kwak ("Kwak") was an individual residing in Los Angeles County, State of California, and was employed by Amerity as a real estate agent.

---

**4**

**ADVERSARY COMPLAINT**

17.     At all times herein mentioned, Defendants Dook Soo Yum ("Yum") was and is an individual who, on information and belief, resides in Los Angeles County, State of California, was and is the principal of co-Defendant Double Y Investments, LLC. At all times Yum was the manager of Double Y.

18.     Defendant Double Y Investments ("DOUBLE Y") is, and at all times mentioned in this complaint was, a limited liability company organized and existing under the laws of the State of California, in the County of Los Angeles, with is principal place of business in Compton, California. DOUBLE Y is the owner of the commercial real property located at 1712 East Alondra Boulevard, Compton, CA 90221.

19.     Plaintiffs is ignorant of the true names and capacities of defendants sued in this complaint as ROES 1 through 30, inclusive, and therefore sues these defendants by these fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

20.     Plaintiffs is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such defendants.

21.     At all times herein mentioned, defendants, and each of them, were acting as agents, servants, employees, fiduciaries, representatives, partners or co-venturer of the other defendants, and each of them, and in doing the acts described herein were acting with the knowledge, consent and permission express or implied, of each of defendants.

## BACKGROUND AND GENERAL ALLEGATIONS

22.    At all times herein mentioned Plaintiffs were the purchasers of a business commonly known as the Alondra Coin Laundry, 1712 East Alondra Boulevard, Compton, CA 90221 (the "Business"). The purchase price of the Business was $895,000.00.

23.    DS Daughters, Somporn and Jiravat were the owners and operators (collectively "the Sellers") of the Business that was up for sale in or around July 2005. DS Daughters, Somporn and Jiravat were the sellers in the purchase and sale of the Business sold to the Plaintiffs.

24.    Amerity, An, Huh, Kwack and Ho were the brokers and real estate agents (collectively "the Brokers") providing dual representation of both the Seller and Purchaser for the purchase and sale of the Business. Specifically, Defendants Amerity, An, Huh, Kwack and Ho acted in their professional capacity as providing real estate agent representation. Defendant An was acting as the listing Agent for the purchase and sale of the Business to the Plaintiffs. Defendant An , and the Brokers, acted as a fiduciary in his role of providing expertise in the purchase and sale of the Business including reviewing statements, financials and contractual agreements in the purchase for Plaintiffs. Defendants Amerity, An, Huh, Kwack and Ho received a commission (i.e. money) for his efforts in completing the transaction.

25.    Yum and Double Y were the owners of the building and lessors of the lease that was assigned from the Sellers to the Plaintiffs in the purchase and sale of the Business.

26.    On or about July, 21, 2005, and continuing until the close of the Escrow on or about May 4, 2006, Defendant An and Brokers made a series of oral and written representations to Plaintiffs in order to induce, and did induce, Plaintiffs to purchase the Business.

27.    Plaintiffs decided to purchase the Business in or around August 2005. Boyd entered into a written agreement with the owner of Alondra Coin Laundry, dba JS Daughters.

28.     Defendant Brokers, in acting as the real estate broker providing representation for and on behalf of Plaintiffs, made representations both orally and in writing concerning the income generated by the Business. Defendant Brokers also represented to Plaintiffs, specifically Defendant An stated that he was familiar with the valuation of coin laundry business, Plaintiffs could rely on his expertise and experience, and that the Alondra Coin Laundry was a profitable business, generating sales of $62,000.00 per month, and profit of no less than $25,464.00 per month.

29.     Specifically, it is alleged that on July 21, 2005, An, as Agent of the broker, made numerous false representations to Ms. Boyd, including but not limited to:

a.  In or around July 2005, defendant met Plaintiffs at the offices of America Realty, at which time Defendant Brokers gave Plaintiffs a handwritten statement ("Statement"), showing among other things, monthly income, expenses and total sales of $62,000. Defendant An orally stated to Plaintiffs that the statement was an accurate financial statement of the monthly income, expenses and sales of the Business.

b.  In or around July 2005, at the meeting with Plaintiffs and Defendant Brokers, and Sellers, Defendant An orally stated that the Statement was received from Seller and that the monthly income, expenses and total sales reflected on the Statement could be trusted.

c.  On or about July 21, 2005, Plaintiffs received the Purchase Agreement from Defendant Brokers and Sellers, in which the monthly gross sales for the Business was represented to be $21,000, $37,000 and $4,000 for the three

**ADVERSARY COMPLAINT**

separate businesses compromising the Business, for a total of $62,000 for the Business.

d.   Within several weeks after signing the Purchase Agreement and before close of Escrow, Defendant Sellers provided to Plaintiffs additional records of the Business. The information in the additional records did not match the information provided on the Statement. Defendant Brokers told Plaintiffs that the Statement accurately reflected the income, expenses and sale of the Business, and that the additional records did not accurately reflect the income of the Business.

e.   The Purchase Agreement contained a handwritten statement that the Sellers would train Plaintiffs for four weeks after the close of Escrow. On information and belief, Defendant Brokers added the statement to the Purchase Agreement and/or directed that it be added to the Purchase Agreement.

f.   On or about August 4, 2005, Sellers signed escrow instructions for the purchase and sale of the Business to Plaintiffs stating that Sellers covenanted and guaranteed that all machinery, equipment and assets of the Business would be in good working order upon possession of the Business by Plaintiffs, and in this regard, sellers, provided a full warranty on the condition of said items for a period of thirty days from Plaintiffs possession of the Business.

g.   Sometime during the first three months of the Escrow, Defendants met Plaintiffs at the Business. Defendant, through statements and conduct, stated to Plaintiffs that the income of the Business had not changed from $62,000 that was represented on the Statement and the Purchase Agreement.

**ADVERSARY COMPLAINT**

30.    On or about May 4, 2006, after the close of the Escrow, Plaintiffs learned that the Defendants made false representations throughout the sale process through the close of escrow. In truth and in fact, the business operation of the Business was grossly overstated, a fact which was known by Defendant Sellers, Brokers, and Lessors, but which was suppressed and concealed from the Plaintiffs. Additionally, Defendants knew that the income of the business had changed and that his previous representations about the income were not accurate. The true facts were as follows:

a.    The income of the Business was substantially less than represented in the Statement, Purchase Agreement and other documents given to Plaintiffs by Defendant Brokers, such that said documents did not accurately reflect the income, expenses and sales of the Business;

b.    The Statement did not accurately state the income, expenses or sales of the Business, and that Defendants knew that the income, expense and sales stated on the Statement were not an accurate representation of said items for the Business and that the income, expenses and sales stated in the Statement could not be trusted;

c.    All Defendants knew that the income, expenses and sales information contained in the Purchase Agreement was false when they signed the Purchase Agreement and provided it to Plaintiffs.

d.    The additional records of the Business provided to Plaintiffs after signing the Purchase Agreement and before the close of Escrow, which Defendant advised should be ignored because the did not accurately reflect the income and expenses of the Business, did in fact more accurately reflect the income,

expenses and sales of the Business that the Statement Plaintiffs relied upon in entering into the Purchase Agreement.

e.  Defendant Brokers knew that Sellers had r intention of abiding by the warranty and providing Plaintiffs with training, fixtures, equipment and assets of the Business in good working order at the time of transfer of possession of the Business, in that after close of Escrow, Plaintiffs learned:

    i.  Sellers intentionally failed to maintain plumbing, electrical wiring, boiler, coin charger, water system, water coolers, air conditioning, bathroom appliances, sink, and other systems in the laundry so as to cause a decrease in the income from the Business; and

    ii.  Sellers had taken and not provided to Plaintiffs the following items intended to be part of the Business: 1) Dollar counter; 2) coin changer; 3) washer and dryer parts; 4) a television; 5) a microwave; 6) spare laundry parts, and 7) various office supplies;

    iii.  Sellers intentionally engaged in a pattern of conduct intended to drive away Business by failing to maintain the equipment, by failing to provide proper security at the Business and by failing to keep the Business clean and sanitary.

f.  Contrary to representations during Escrow Defendant Brokers knew that Defendant Sellers Business income had changed; and knew crime was a problem at the Business including instances of violent crime had occurred at the Business or in the immediate vicinity of the Business and that there had been instances of petty crime.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

**(As Against JS Daughters, Somporn, Jiravat and Roes, and each of them)**

31.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 30 of this Complaint as though fully set forth below.

32.    On or about July 21, 2005, Plaintiffs and JS Daughters, Somporn, Jiravat and Roes, and each of them, entered into the Escrow which closed on or about May 4, 2006. At the close of the Escrow, JS Daughters, Somporn, Jiravat and Roes, and each of them, received from Plaintiffs cash and Promissory Notes in the approximate amount of $895,000.00.

33.    JS Daughters, Sompom, Jiravat and Roes, and each of them, breached the terms and conditions of the Purchase Agreement and oral agreements and representations made by them to Plaintiffs by:

    a.    Failing to accurately represent to Plaintiffs the income, expenses and sales of the Business;

    b.    Failing to maintain the level of income which had been represented to Plaintiffs;

    c.    Failing and refusing to train Plaintiffs in the operation of the Business;

    d.    Failing to maintain the equipment and assets of the Business;

    e.    Failing to deliver to Plaintiffs the equipment and assets of the Business in good working order, in that there were considerable deficiencies in the Business' plumbing, washers and dryers, the security system, boiler, TV sets, coin changer, electrical wiring, water purification, tile, panels, laundry room

**ADVERSARY COMPLAINT**

sink and faucet, freezer, electrical security door, freezer shelves, door turn,

water coolers and air-conditioning, bathroom appliances and sinks, door

handles, office chair, cash register, office equipment, carpeting, refrigeration,

gates and ceiling tiles;

    f.   Failing to deliver to Plaintiffs equipment and assets of the Business, in that the

following equipment and assets of the Business were missing at the time

Plaintiffs took possession of the Business, including but not limited to: 1)

Dollar counter; 2) coin changer; 3) washer and dryer parts; 4) a television; 5) a

microwave; 6) spare laundry parts; and 7) various office supplies; and

    g.   Failing to maintain the Business during the Escrow.

    34.    Plaintiffs have performed each and every condition required on their part to be performed in accordance with the terms and conditions of the Purchase Agreement, except for matters that are excused as a matter of law and/or excused by breaches of JS Daughters, Sompom, Jiravat and Roes, and each of them.

    35.    Plaintiffs have demanded that JS Daughters, Sompom, Jiravat and Roes, and each of them, perform their obligations under the Purchase Agreement and oral agreements and representations, but JS Daughters, Sompom, Jiravat and Roes, and each of them, have failed and refused to perform said obligations.

    36.    As a direct and proximate result of the breaches of the Purchase Agreement and oral agreements and representations by JS Daughters, Sompom, Jiravat and Roes, and each of them, Plaintiffs have suffered and continue to suffer damages in an amount according to proof.

    37.    As a direct and proximate result of the breaches of the Purchase Agreement and oral agreements and representations by JS Daughters, Sompom, Jiravat and Roes, and each of

them, Plaintiffs have incurred attorneys' fees and costs in an amount according to proof, which fees and costs Plaintiffs are entitled to recover from JS Daughters, Sompom, Jiravat and Roes, and each of them, pursuant to contract.

## SECOND CLAIM FOR RELIEF

## INTENTIONAL MISREPRESENTATION

### (Against All Defendants)

38.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 37 of this Complaint as though fully set forth below.

39.    Plaintiffs are informed and believe and thereon allege that from at least as early as 2002 until the close of the Escrow, JS Daughters owned the Business, Jiravat managed and operated the Business, and Somporn owned and operated the Business.

40.    Amerity, Huh, Ho, Kwak and An, and each of them, were the brokers and real estate agents for the purchase and sale of the Business. Specifically, Huh was and is the owner and alter ego of Amerity; Amerity and Ho did and do business as America Realty; Kwak  and An were and are real estate agents and were employed as real estate agents for Amerity doing business as America Realty; the Purchase Agreement is on America Realty's letterhead; Amerity doing business as America Realty was the Selling Agent and Broker for the purchase and sale of the Business to Plaintiffs and America Realty is identified as such on the Purchase Agreement; and Kwak and An were the Listing Agents for the purchase and sale of the Business to Plaintiffs and are identified as such on the Purchase Agreement.

41.    On or about July 21, 2005, and continuing until the close of the Escrow on or about May 4, 2006, defendants, and each of them, made a series of oral and written representations to Plaintiffs, including Paula Boyd ("Boyd"), in order to induce and did induce

Plaintiffs to purchase the Business. Jiravat and Somporn, and each of them, made the representations as representatives, agents and/or principals of JS Daughters and on behalf of themselves and JS Daughters, and each of them. Kwak and An made the representations as representatives, agents and/or principals of Amerity, America Realty, Huh, Ho, JS Daughters, Jiravat and Somporn, and each of them, and on behalf of themselves and Amerity, America Realty, Huh, Ho, JS Daughters, Jiravat and Sompom, and each of them.

42.    At the time Defendants made the representations stated above to Plaintiffs, all Defendants knew of the falsity of the representations and made the representations with the intent to induce and did induce Plaintiffs to purchase the Business.

43.    Each representation made by Defendants, was a material inducement to Plaintiffs to purchase the Business and was known by defendant to be a material inducement for Plaintiffs to purchase the Business.

44.    Plaintiffs, at the time representations were made and at the time they took the actions herein alleged, including but not limited to purchasing the Business, were ignorant of the falsity of the represents and could not, in the exercise of reasonable diligence, have discovered the falsity of the representations.

45.    In reliance on the Defendant's representations, Plaintiffs took the actions herein alleged, including but not limited to purchasing the Business and paying total cash and consideration in the amount of approximately $895,000 for the purchase of the Business. The Plaintiffs relied on the false representations made by the Defendants, which reliance was reasonable and justified under the circumstances in that Defendant was acting as licensed real estate broker.

46.    Had Plaintiffs known the representations were false, Plaintiffs would not have purchased the Business, paid the cash and consideration in the amount of $895,000.00 for the purchase of the Business or taken other actions herein alleged.

47.    As a direct and proximate result of the intentional misrepresentations by Defendant, Plaintiffs has suffered and continues to suffer damages in an amount according to proof.

48.    As a direct and proximate result of the intentional misrepresentations by defendant, Plaintiffs have incurred attorney fees and costs in the amount according to proof, which fees and costs Plaintiffs are entitled to recover from Defendants, pursuant to contract.

49.    In committing the alleged acts and misrepresentations, Defendants acted knowingly, willfully and with oppression, fraud and malice, and with the intent to permanently deprive Plaintiffs of their cash, consideration and investment in the Business. Plaintiffs are entitled to receive from Defendants punitive damages in such an amount as shall be determined at trial.

50.    Defendants benefitted from their improper acts or omissions in receiving a commission from the purchase and sale of the Business.

### THIRD CLAIM FOR RELIEF
### FRAUD
### (Against All Defendants)

51.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 50 of this Complaint as though fully set forth below.

52.    Defendants, and each of them intentional and with reckless disregard for the truth, made material misrepresentations to Plaintiffs; intentionally and with reckless disregard for the truth failed to inform Plaintiffs of certain material facts, including, inter alia, the following:

a. Inducing Plaintiffs to execute the purchase and sale agreement to bind Plaintiffs to the terms based upon false financial documents Defendants had reviewed in his capacity of agent and fiduciary assuring Plaintiffs that the Statements were reliable and showing a positive and profitable cash flow;

b. Failing to inform Plaintiffs of the true and correct income for the Business. In fact, Defendants had knowledge of the true financials showing the Business had a declining revenue of 20% over the previous 2 year period prior to Plaintiffs purchasing the Business.

c. Inducing Plaintiffs to enter into the Business purchase contract for the sum of $895,000, in order for Defendant to collect commission (i.e. money) on the closing of the sale.

53.    The above acts by Defendants were willful and intended to deceive, constituted a fraudulent scheme on the part of Defendants, and each of the, jointly and severally, to secure monies and additional fees from the Plaintiffs.

## FOURTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

### (As to All Defendants)

54.    Plaintiffs hereby repeat and reallege each and every allegation contained in paragraphs 1 through 53, inclusive, hereinabove and incorporate the same herein by this reference as though fully set forth herein.

55.    When Defendants made the representations set forth above to Plaintiffs, defendants, and each of them, had no reasonable ground for believing that the representations were true.

56.    At the time Defendants, and each of them, made the representations set forth above to Plaintiffs, defendants, and each of them, did so with the intent to induce and did induce Plaintiffs to purchase the Business. Each of the representations made by the Defendants, and each of them, were material inducements to Plaintiffs to purchase the Business and were known by Defendants, and each of them, to be material inducements to Plaintiffs to purchase the Business.

57.    Plaintiffs, at the time the representations were made and at the time Plaintiffs took the actions herein alleged, including but not limited to purchasing the Business, were ignorant of the falsity of the representations and could not, in the exercise of reasonable diligence, have discovered the falsity of the representations.

58.    In reliance on Defendants representations, Plaintiffs took the actions herein alleged, including but not limited to purchasing the Business and paying total cash and consideration in the amount of approximately $895,000.00 for the purchase of the Business.

59.    If Plaintiffs had known that Defendants' representations were false, then Plaintiffs would not have purchased the Business, paid the cash and consideration in the an1ount of approximately $895,000.00 for the purchase of the Business or taken the other actions herein alleged.

60.    As a direct and proximate result of the intentional misrepresentations by defendants, and each of them, Plaintiffs have suffered and continue to suffer damages in an amount according to proof.

61.    As a direct and proximate result of the negligent misrepresentations by -defendants, and each of them, Plaintiffs have incurred attorneys' fees and costs in an amount

**ADVERSARY COMPLAINT**

according to proof, which fees and costs Plaintiffs are entitled to recover from defendants, and each of them, pursuant to contract.

62.     In committing the alleged acts and misrepresentations, defendants, and each of them, acted knowingly, willfully and with oppression, fraud and malice, and with the intent to permanently deprive Plaintiffs of their cash, consideration and investment in the Business. Plaintiffs therefore are entitled to receive from Defendants, and each of them, punitive damages in such amount as shall be determined at trial.

### FIFTH CLAIM FOR RELIEF
### RESCISSION BASED ON FRAUD

(As Against JS Daughters, Somporn, Jiravat and Roes, and each of them)

63.     Plaintiffs hereby repeat and reallege each and every allegation contained in paragraphs 1 through 62, inclusive, hereinabove and incorporate the same herein by this reference as though fully set forth herein.

64.     Plaintiffs consent to their purchase of the Business was procured by misrepresentation and/or fraud and all agreements between and JS Daughters, Somporn, Jiravat and Roes, and each of them, including but not limited to the Purchase Agreement and Promissory Notes, are voidable or void.

65.     As a proximate result of the conduct of the Defendants, and each of them, Plaintiffs are entitled to rescind all agreements concerning and arising out of the purchase and sale of the Business, including but not limited to the Purchase Agreement and Promissory Notes, and hereby offer to restore to Defendants, and each of them, all of the property received by the Plaintiffs and in exchange are entitled to the return of all of the consideration received by defendants, and each of them, from Plaintiffs.

66.    As a direct and proximate result of the conduct by Defendants, and each of them, Plaintiffs have suffered and continue to suffer damages in an amount according to proof.

67.    As a direct and proximate result of the conduct by Defendants, and each of them, Plaintiffs have incurred attorneys' fees and costs in an amount according to proof, which fees and costs Plaintiffs are entitled to recover from Defendants, and each of them, pursuant to contract.

## SIXTH CLAIM FOR RELIEF

### Objection to Dischargability of Debt

### §523(a)(2)(A)

### As Against Defendant An (false pretenses, a false representation, or actual fraud)

68.    Plaintiffs reincorporate paragraphs 1 through 16 as set forth in full herein.

69.    Defendants made the aforementioned representations to the Plaintiffs Boyd.

70.    At the times Defendants made each and all of these representations, Defendants knew the representations were false.

71.    At the times Defendants made each and all of these representations, Defendants made these representations with the intention and purpose to deceive the Plaintiffs.

72.    The Plaintiffs Paula Boyd reasonably relied on such representations.

73.    The Plaintiffs Paula Boyd sustained losses and damages alleged herein as the proximate result of the misrepresentations (and omissions) alleged herein.

74.    The Plaintiffs Paula Boyd is entitled to a judgment; the debts alleged herein, are nondischargeable. In addition, the Plaintiffs is entitled to an award of punitive damages due to Defendants' conduct alleged herein.

///

---

19

**ADVERSARY COMPLAINT**

## SEVENTH CLAIM FOR RELIEF

### Objection to Dischargeability of Debt

### §523(a)(2)(B)

### As Against all Defendants (False Statements in writing with intent to deceive)

75.    Plaintiffs reincorporate paragraphs 1 through 23 as set forth in full herein.

76.    Defendants made representations of fact (and omissions) in writing, e.g., those concerning personal and business financial status and uses of the Plaintiff's monies.

77.    Defendants' representations were material.

78.    At the time Defendants made their representations (and omissions), Defendants knew their representations (and omissions) were false and/or misleading.

79.    At the time Defendants made their representations (and omissions), Defendants made them with the intention to deceive Plaintiffs.

80.    The Plaintiffs relied on the representations (and omissions).

81.    The reliance was reasonable.

82.    The damages the Plaintiffs suffered proximately resulted from the representations (and omissions).

83.    The Plaintiffs is entitled to a judgment that the debts alleged herein above are nondischargeable. In addition, the Plaintiffs is entitled to an award of punitive damages due to Defendants' conduct alleged herein.

///

///

///

ADVERSARY COMPLAINT

## EIGHTH CLAIM FOR RELIEF

### Objection to Dischargablility of Debt

### §523(a)(4)

### As Against Defendant An (breach of fiduciary duty,

### fraud as fiduciary, misrepresentation)

84.    Plaintiffs reincorporates paragraphs 1 through 83 as set forth in full herein.

85.    At the time Defendants were acting as her agents in connection with the purchase of the Business, and Defendants owed a fiduciary duty to the Plaintiffs, Defendants owed a fiduciary duty to the Plaintiffs.

86.    Defendant's actions, as alleged herein, were not mere negligence or a breach of ordinary care.

87.    Defendant's discharge of this debt should be denied pursuant to §523(a)(4) as a breach of their fiduciary duties.

## NINTH CLAIM FOR RELIEF

### OBJECTION TO DISCHARGEABILITY OF DEBT

### As Against Defendant An (willful and malicious injury)

88.    Plaintiffs reincorporates paragraphs 1 through 87 as set forth herein.

89.    Defendants actions, alleged herein above, were done with knowledge and understanding that their actions had no merit. Defendants intended their actions. Defendants intended the act, e.g. obtaining monies under false pretenses and while acting as a fiduciary. Defendant intended the injury, e.g., not to repay the Plaintiffs. Furthermore, Defendants knew the injury was substantially certain to occur.

**ADVERSARY COMPLAINT**

90.    By virtue of these, and other, acts and omissions, Defendants discharge of this debt should be denied under to §523(a)(6).

**WHEREFORE**, Plaintiffs prays for judgment as follows:

a)   On all claims for relief: denial of dischargeability of the debts alleged;

b)   General damages in amount according to proof;

c)   Exemplary damages according to proof;

d)   For the costs and disbursements of this actions;

e)   For attorneys fees if and as provided by law; and

f)   For such other and further relief as is just and proper and consistent with the allegations in this Complaint.

Dated: November 12, 2014

LAW OFFICES OF JULIUS JOHNSON

Julius Johnson, Esq.
Attorney for Plaintiffss

**ADVERSARY COMPLAINT**

RECEIVED

NOV 18 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT

FORM B104 (08/07)                                                                2007 USBC, Central District of California

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Page 2) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>*Daniel Boyd and Paula Boyd* | DEFENDANTS<br>*CHIN KEN AN et al* |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>*Law office of Julia Dickson and Associate Inc*<br>*2476 N. Lake*<br>*Altadena CA 91___  626-793-___* | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☒ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

| CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br>*Non discharge ability* |
|---|

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false
    representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement,
    larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state
    court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ *900,000* |

| Other Relief Sought |
|---|

FORM B104 (08/07), page 2                                              2007 USBC, Central District of California

### BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| *Darryl L. and Paula Boyd* | *2-11-bk-46346 BB* |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| *Central* | *Dept 38* | *Green* |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| | | |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|
| |

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| *Nov 18, 2014* | *Julius Johnson* |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.